## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOLORES HOLMES,

       *Plaintiff*,

    v.

LLOYD J. AUSTIN, III,

       *Defendant*.

Civil Action No. 23-2415 (LLA)

## MEMORANDUM OPINION AND ORDER

Tolores Holmes brings this action against Lloyd J. Austin, III, in his official capacity as Secretary of Defense.  Ms. Holmes alleges that her employer, the Department of Defense (the "Agency"), discriminated against her, created a hostile work environment, and constructively discharged her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Pending before the court is the Agency's motion to dismiss.  ECF No. 14.  For the reasons explained below, the court will grant the Agency's motion in part and deny it in part.

### I.    Factual Background

The following factual allegations drawn from Ms. Holmes's amended complaint, ECF No. 4, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Ms. Holmes, an African American woman in her sixties, worked as a Registered Nurse at the 11th Medical Group at Joint Base Andrews from November 5, 2005 through May 3, 2019.  ECF No. 4, at 3 ¶¶ 2, 8.  Throughout her

time there, she annually received "Fully Successful" or "Outstanding" performance ratings as well as a yearly bonus or performance award.  *Id.* at 3, ¶¶ 4-5.

In November 2017, Major Yessenia Sinclair became Ms. Holmes's first-level supervisor. *Id.* ¶ 10.   Major Sinclair "immediately began to verbally abuse Ms. Holmes."   *Id.* ¶ 13.  She "frequently yelled at Ms. Holmes with her peers present, slammed doors . . . and threatened to write her up."  *Id.* ¶ 15.  Major Sinclair referred to Ms. Holmes as a "monkey" and stated that she did not want to put "monkeys in consults" with patients.  *Id.* ¶ 18.  With no justification, she threatened to report Ms. Holmes to the Board of Nursing to have her nursing license revoked. *Id.* ¶ 17.  Major Sinclair's behavior continued daily from November 2018 through March 2019. *Id.* ¶ 19.

On January 31, 2019, Major Sinclair began increasing Ms. Holmes's nursing assignments. *Id.* ¶ 24.  The work was unevenly assigned between the nurses in the unit.  While Ms. Holmes provided support to multiple providers, Michelle Jorstad, a white nurse under the age of forty, was only assigned to assist one provider.   *Id.* ¶¶ 26-27.   Additionally, Major Sinclair entered Ms. Holmes's office "multiple times" a day asking her to review and sign off on policy and procedure changes; previously, these changes only needed to be read and did not require a signature of receipt.  *Id.* ¶¶ 29-30.  Frequently reviewing "numerous volumes of policies for updates and changes" impacted Ms. Holmes's ability to complete her increasing duties and "contributed to increased stress and confusion among the nurses."  *Id.* ¶¶ 31-32.  Between February 15 and March 4, 2019, Ms. Holmes worked until 7:00 p.m. due to Major Sinclair's constant threat of disciplinary action if she failed to meet her requirements.  *Id.* ¶ 28.

During this time, while two white nurses under the age of forty were promoted, Ms. Holmes and two other black nurses over forty years old were removed from patient care and investigated for quality assurance and compliance with procedures.  *Id.* ¶¶ 33-35.

On February 4, 2019, Major Sinclair issued Ms. Holmes a "Letter of Counseling" dated September 12, 2018 and a "Letter of Expectation" dated November 29, 2018, both of which alleged that Ms. Holmes had documentation errors in her charts and that disciplinary action could be initiated.  *Id.* ¶¶ 36-37.  This surprised Ms. Holmes because during her October 2018 midpoint review, Major Sinclair had thanked her for her assistance with the additional duties she had been assigned and had not issued any letters or expressed any concerns.  *Id.* ¶¶ 38-40.  Major Sinclair issued similar letters to two other nurses of color over the age of fifty, while white nurses under the age of forty did not receive such letters.  *Id.* ¶¶ 41-42.

Two weeks later, on February 19, 2019, Major Sinclair publicly berated and threatened to write up Ms. Holmes and two other nurses of color because the clinic had failed an inspection. *Id.* ¶¶ 43-44.  Ms. Holmes, however, had provided documentation to Major Sinclair that she had performed all the necessary monthly inspections in accordance with the clinic's policy. *Id.* ¶¶ 45-46.

On March 5, 2019, Ms. Holmes requested sick leave because she was suffering from anxiety and increased migraines due to the stress from her job.  *Id.* ¶ 47.  While Ms. Holmes called Major Sinclair several times and left messages to request the time off, Major Sinclair did not answer "in an apparent attempt to manufacture circumstances under which [she] could report [a] minority, older employee as [Absent Without Leave ("AWOL")]."  *Id.* ¶¶ 48-49.  Major Sinclair had frequently threatened to mark employees as AWOL.  *Id.* ¶ 56.  Major Sinclair refused to authorize Ms. Holmes's use of sick or annual leave.  *Id.* ¶ 57.  When Ms. Holmes failed to report

to work, Major Sinclair sent the Prince George's County Police Department to Ms. Holmes's home in order to give her Major Sinclair's contact information.  *Id.* ¶ 54.  Ms. Holmes was "falsely charged with AWOL."  *Id.* ¶ 46.

Due to the anxiety and stress from her job, Ms. Holmes retired in May 2019.  *Id.* ¶ 60.

## II.      Procedural History

Ms. Holmes filed an equal employment opportunity ("EEO") charge claiming that Major Sinclair had discriminated against her on the basis of race and age and had subjected her to a hostile work environment.  ECF No. 14-2, at 1.  In her charge, she lists the following four incidents: (1) that from November 2018 to March 2019, Major Sinclair verbally abused and harassed her over the "slightest patient care documentation discrepancies"; (2) that on February 4, 2019, Major Sinclair issued her a letter of counseling; (3) that on February 19, 2019, Major Sinclair "berated and [publicly] humiliated her in front of her peers"; and (4) that on March 18, 2019, Major Sinclair falsely charged her with AWOL.  *Id.*  The Agency concluded that Ms. Holmes had not been subjected to unlawful employment discrimination, and the Equal Employment Opportunity Commission's Office of Federal Operations affirmed that decision in May 2023.  ECF No. 4 ¶ 61.

Having failed to obtain administrative relief, Ms. Holmes filed suit on August 18, 2023, alleging discrimination, hostile work environment, and constructive discharge on the basis of race (Count I) and age (Count II).  ECF No. 4 ¶¶ 62-66.  She seeks compensatory and punitive damages as well as attorney's fees and costs.  ECF No. 4, at 8-9.

In December 2023, the case was reassigned to the undersigned.  Docket, No. 23-CV-2415 (Dec. 14, 2023).  In January 2024, the Agency filed a motion to dismiss, ECF No. 14, and the matter is fully briefed, ECF Nos. 17, 19.

### III.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

While a plaintiff need not establish a prima facie case of discrimination at the pleading stage, she must allege sufficient facts beyond mere legal conclusions to allow the court to draw a reasonable inference of discrimination from the complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002).  "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is 'plausible on its face,' then the district court should dismiss the case before discovery."  *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)); *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 281-82 (D.D.C. 2017) (setting forth the same standard in the context of the ADEA).

### IV.     Discussion

Ms. Holmes alleges that the Agency violated Title VII and the ADEA by discriminating against her on the basis of race and age, creating a hostile work environment, and constructively discharging her.   The Agency argues that Ms. Holmes failed to exhaust her administrative remedies for several of her claims, ECF No. 14-1, at 4-8, and that she fails to state a claim on which relief can be granted for others, *id.* at 8-21.   The court will grant the Agency's motion to dismiss in part, but it will allow Ms. Holmes to proceed with her hostile work environment claim on the basis of race.

### A.     Exhaustion

A plaintiff may not initiate a civil action under Title VII or the ADEA until she has exhausted her administrative remedies for each discrete discriminatory act.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Exhaustion allows federal agencies "to handle matters internally whenever possible."  *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  Under the ADEA, the employee may follow Title VII's administrative process, or she may directly file suit in federal court.  *See Lawson v. Sessions*, 271 F. Supp. 3d 119, 133 (D.D.C. 2017); 29 U.S.C. § 633a(d).  If the plaintiff chooses to directly file suit, she must do so "within 180 days of the allegedly discriminatory act" and notify the EEOC of her "intent to sue at least 30 days before commencing suit."  *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003); *see* 29 U.S.C. §§ 633a(c), (d).  Ms. Holmes does not contend that she directly filed her ADEA claim in federal court, so both her Title VII claim and her ADEA claim will be analyzed under Title VII's exhaustion rubric.

Under Title VII, the exhaustion process begins when the federal employee "initiate[s] contact" with her agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory act.  29 C.F.R. § 1614.105(a)(1).  "Each discrete discriminatory act starts a

6

new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Morgan*, 536 U.S. at 113.

The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115.  By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.*  Accordingly, a hostile work environment claim is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117.  But the act must be one that "contribut[es] to the claim," *id.*—that is, the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

If the employee's grievance is not resolved through informal counseling, the employee may file a formal complaint, which the agency investigates and adjudicates.  29 C.F.R. § 1614.106. The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings.  *See Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022).  "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."  29 C.F.R. § 1614.106(d). After a formal complaint is filed, the agency has 180 days to investigate; if the employee amends his complaint, the agency must "complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint."  29 C.F.R. §§ 1614.106(e)(2), 1614.108(e) & (f).  The agency either provides a final decision within these time periods, or it does not.  *Bain*, 648 F. Supp. 3d at 45.  If it does, the employee has two choices: (1) appeal that decision to the EEOC within thirty days; or (2) file suit in federal court within

ninety days.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401(a), 1614.402(a); *see In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006).[1]  Here, Ms. Holmes appealed the Agency's decision to the EEOC.  ECF No. 4 ¶ 61.

The failure to exhaust administrative remedies is an affirmative defense, meaning that the defendant bears the burden to plead and prove the plaintiff's failure to exhaust.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  If the defendant meets this burden, then the burden shifts back to the plaintiff to "plead[] and prov[e] facts supporting equitable avoidance of the defense."  *Id.*

The Agency argues that Ms. Holmes exhausted only the following claims asserted in her charge of discrimination:

- From November 2018 through March 2019, Major Sinclair "verbally abused" Ms. Holmes "and began harassing her on the slightest patient care documentation discrepancies";

- On February 4, 2019, Major Sinclair "issued [Ms. Holmes] a letter of counseling";

- On February 19, 2019, Major Sinclair "berated and [publicly] humiliated [Ms. Holmes] in front of her peers"; and

- On March 18, 2019, Major Sinclair "falsely charged" Ms. Holmes with AWOL.

ECF No. 14-2; *see* ECF No. 17-1, at 2-8 (Ms. Holmes's December 10, 2019 affidavit repeating the above four allegations of discrimination).  Thus, the Agency argues that Ms. Holmes has failed to exhaust the additional claims in her complaint that she was removed from patient care, subjected to a quality assurance investigation while white nurses under the age of forty were promoted, faced an increased workload in February and March 2019, and was constructively discharged.

---

[1] If the employee takes the first option, she may file a civil action in federal district court after the EEOC has issued its final decision.  42 U.S.C. § 2000e-16(c); *see Perry v. Raimondo*, 101 F.4th 55, 57 (D.C. Cir. 2024).

ECF No. 14-1, at 4-8.  Ms. Holmes counters that the challenged allegations in her complaint are "like or related" to her exhausted claims and that she raised them later in the EEO investigation, citing a December 2019 affidavit that she submitted as part of the investigation.  ECF No. 17, at 3-5 (quoting *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007)).

The court agrees with the Agency.  Before the Supreme Court's decision in *Morgan*, the D.C. Circuit allowed plaintiffs to raise in federal court claims that were "like or reasonably related to the allegations of the charge and growing out of such allegations."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  But even in that circumstance, the Court acknowledged that "[t]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship."  *Id.* at 908 (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

After the Supreme Court held in *Morgan* that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," 536 U.S. at 113, there has been some question whether *Park*'s "reasonably related" test remains good law as it pertains to claims that arose during the EEO process but were not the subject of an amendment to the complaint.  The D.C. Circuit has thrice declined to decide the issue.  *Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Weber*, 494 F.3d at 183-84.  In the absence of guidance from the D.C. Circuit, most courts in this district have concluded that *Morgan* displaced the "reasonably related" rule.  *See Bain*, 648 F. Supp. 3d at 45; *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (collecting cases).  *But see Mount v. Johnson*, 36 F. Supp. 3d 74, 84-85 (D.D.C. 2014) (collecting cases continuing to apply the

"reasonably related" rule).  This court adopts the majority rule because it is more consistent with *Morgan*'s command that discrete claims of discrimination be treated individually.  536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").  The majority rule also fully accounts for 29 C.F.R. § 1614.106(d), which allows a plaintiff to amend her complaint during the pendency of the EEO investigation—an option Ms. Holmes did not pursue.  Accordingly, Ms. Holmes cannot raise as discrete claims in federal court the four allegations she failed to raise in her EEO complaint.  *See* ECF No. 14-2.[2]

Ms. Holmes fares no better in trying to save her unexhausted claims by reference to her December 2019 affidavit.  ECF No. 17-1. This affidavit was not part of her EEO complaint— instead, Ms. Holmes shared this information as part of the EEO investigation.  "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role."  *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (alteration in original) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)).  Accordingly, the Agency is correct that Ms. Holmes has failed to exhaust claims that she was removed from patient care, subjected to a

---

[2] Even if the "like or reasonably related" test were still good law, Ms. Holmes's argument would fail because the actions she alleges—removal from patient care, being subjected to a quality assurance investigation, experiencing an increased workload in February and March 2019, and constructive discharge—are discrete acts of discrimination unrelated to her exhausted claims. *See, e.g.*, *Sandler v. Blinken*, No. 21-CV-2226, 2022 WL 4547557, at *6 (D.D.C. Sept. 29, 2022) (explaining that courts have "reject[ed] attempts . . . to piggy-back termination claims that are the 'culmination' of plaintiffs' properly exhausted hostile work environment or discrimination claims." (second alteration in original) (quoting *Terveer v. Billington*, 34 F. Supp. 3d 100, 113 (D.D.C. 2014))).

quality assurance investigation while white nurses under the age of forty were promoted, faced an increased workload in February and March 2019, and was constructively discharged.

### B.     Disparate Treatment

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA further prohibits employers from discriminating against employees with respect to "compensation, terms, conditions, or privileges of employment, because of [their] age." 29 U.S.C. § 623(a)(1). A plaintiff bringing a claim under Title VII or the ADEA must plead (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between her protected characteristic and the adverse employment action. *See Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024).

The Agency does not dispute that Ms. Holmes, an African American woman over the age of forty, is a member of protected classes on the basis of her race and age, nor does it dispute that receiving a letter of counseling or being marked as AWOL constitute adverse actions. Instead, it argues that Ms. Holmes has failed to allege a sufficient connection between her race or age and the adverse actions. ECF No. 14-1, at 8-12. The court agrees.

One way that a plaintiff can allege a causal connection is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator. *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that

[she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second and third alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

Ms. Holmes does not sufficiently allege that similarly situated employees of a different race or age were treated more favorably, nor does she allege any other facts that would support a reasonable inference of discrimination.  As to her claim about receiving a letter of counseling, Ms. Holmes alleges that Major Sinclair issued her the letter because of "documentation errors in her charts."  ECF No. 4 ¶¶ 36-37.  She alleges that Major Sinclair "issued multiple letters of counseling" to two "nurses [who are] women of color over the age of 50," *id.* ¶ 41, but that "Major Sinclair did not similarly discipline any Caucasian nurses under the age of 40," *id.* ¶ 42. These facts are insufficient to create an inference of discrimination.  *See, e.g.*, *SS & T, LLC*, 2020 WL 1170288 at *4 ("SS & T cannot merely allege that similarly situated leaseholders not owned by persons of Indian-descent were treated differently and then offer 'nothing more in the way of specific facts or allegations associated with this claim.'" (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007))).  Ms. Holmes does not allege, for example, the basis on which the other nurses of color were issued letters of counseling—whether for documentation errors on their charts or for an entirely different reason.  Nor does she allege that a white nurse under the age of forty had documentation errors on her charts but did not receive a letter of counseling.  In the absence of such factual allegations, the court is left to speculate—and, to survive a motion to

12

dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Ms. Holmes similarly fails to allege a causal connection between her AWOL charge and her protected traits.  In support of this claim, she states that Major Sinclair "routinely did not answer her phone in an apparent attempt to manufacture circumstances under which [Major Sinclair] could report minority, older employee[s] as AWOL."  ECF No. 4 ¶ 49.  She further argues that the fact "that there was no legitimate reason for these adverse actions . . . [makes] evident that Major Sinclair's discriminatory animus motivated them."  ECF No. 17, at 7.  But, as the Agency points out, Ms. Holmes neither alleges that similarly situated employees outside of her protected classes had leave approved nor provides any non-conclusory allegations linking her AWOL charge to her race or age.  ECF No. 14-1, at 9.  Instead, her allegations rest on conclusory statements regarding Major Sinclair's motivations that the court need not credit.  *Iqbal*, 556 U.S. at 686.  Accordingly, Ms. Holmes's allegations of a causal connection between her AWOL charge and her race and age are too threadbare to survive the Agency's motion to dismiss.

### B.      Hostile Work Environment

To survive a motion to dismiss a hostile work environment claim, the plaintiff must sufficiently allege that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "[A] few isolated incidents of offensive conduct do not amount to actionable harassment."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  The incidents must be "adequately connected to

each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d at 1252.  In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)).

Ms. Holmes alleges that Major Sinclair perpetuated a hostile work environment by "verbally abus[ing]" her between November 2018 and March 2019, including by threatening to "write [Ms. Holmes] up" and report her to the Board of Nursing, ECF No. 4 ¶¶ 13, 15, 17, 44; "stating she did not want to put 'monkeys in consults,'" which Ms. Holmes took to be a derogatory comment about her race, *id.* ¶ 18; and "publicly berat[ing]" Ms. Holmes in front of her peers, *id.* ¶ 43.

"The standard for hostile work environment cases is a 'high bar.'" *Montgomery v. McDonough*, No. 22-CV-1715, 2024 WL 1344443, at *12 (D.D.C. Mar. 29, 2024) (quoting *Joyner v. Morrison & Foerster LLP*, No. 20-CV-1440, 2023 WL 6313194, at *7 (D.D.C.), *appeal filed*, No. 23-7142 (D.C. Cir. 2023)).  But the D.C. Circuit has suggested that even the single "use of an unambiguously racial epithet" might constitute a hostile work environment.  *Ayissi-Etoh*, 712 F.3d at 577.  Courts in this district have on several occasions "faced the question of whether the alleged use of a monkey to depict African American co-workers might, by itself, constitute a hostile work environment."  *Vance v. O'Rourke*, No. 18-CV-577, 2019 WL 914010, at *7 (D.D.C. Feb. 22, 2019).  Some have found that the single use of the word "monkey" or a depiction of a monkey directed toward an African American employee is enough to establish a hostile work environment.  *See, e.g.*, *Burkes v. Holder*, 953 F. Supp. 2d 167, 170 (D.D.C. 2013) (denying a

motion to dismiss a race-based hostile work environment claim where an employee witnessed a stuffed monkey hanging by its neck in a public work area); *Vance*, 2019 WL 914010, at *8 (denying summary judgment to afford the plaintiff an opportunity to take discovery into whether a supervisor had "purposefully used . . . monkey statuettes to refer to his African American [d]irectors in order to draw on the ugly racial imagery of associating African Americans with monkeys"); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (en banc) (holding that a jury could find that the "uses of the 'porch monkey' epithet—whether viewed as a single incident or as a pair of discrete instances of harassment—were severe enough to engender a hostile work environment"). *But see Toomer v. Esper*, 464 F. Supp. 3d 157, 170 (D.D.C. 2020) (granting summary judgment in a case involving a "Bigfoot" action figure when the record, after discovery, did not show a racially hostile work environment), *aff'd sub nom.*, *Toomer v. Austin*, No. 20-5184, 2022 WL 301561 (D.C. Cir. Jan. 21, 2022).

The court cannot conclude, based on the record before it, whether Major Sinclair's use of the term "monkey" was "an unambiguously racial epithet" that would, on its own, give rise to a claim for a hostile work environment, but Ms. Holmes's allegation is certainly sufficient to defeat a motion to dismiss. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) ("'Given the history of racial stereotypes against African-Americans and the prevalent one of African-Americans as animals or monkeys, it is a reasonable—perhaps even an obvious— conclusion that' the use of monkey imagery is intended as a 'racial insult' where no benign explanation for the imagery appears." (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998))). This is all the more so when Major Sinclair's comment is viewed in combination with her other disparaging remarks about Ms. Holmes. *See* ECF No. 4 ¶¶ 13-19, ECF No. 14-2.

Accordingly, the court will allow Ms. Holmes to proceed to discovery on her hostile work environment claim based on race.[3]

## V.      Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 14, is **GRANTED** in part and **DENIED** in part.  Ms. Holmes may proceed on Count I insofar as she is alleging a hostile work environment based on race.  The complaint is otherwise **DISMISSED**.  It is further **ORDERED** that the Agency shall file an answer to Count I on or before October 15, 2024.  Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date:   September 30, 2024

---

[3] The same cannot be said for Ms. Holmes's claim that she suffered a hostile work environment on the basis of age, as there is nothing to suggest that Major Sinclair's comments were at all related to Ms. Holmes's age.